

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case:2:20-cr-20599<br>Judge: Roberts, Victoria A.<br>MJ: Stafford, Elizabeth A.<br>Filed: 12-16-2020 At 01:18 PM<br>INDI USA V. ANGELO ET AL (DA) |
| Plaintiff, | : | |
| v. | : | Ct. 1: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud |
| D-1 JOHN ANGELO, | : | |
| D-2 CORY JUSTIN MANN, | : | Ct. 2: 18 U.S.C. § 371 – Conspiracy to Defraud the United States |
| D-3 ROSINA ANGELO<br>  a/k/a "ROSINA CARUVANA", | : | |
| D-4 MICHAEL DANESHVAR, | : | Cts. 3-7: 26 U.S.C. § 7206(2) – Aiding or Assisting in the Preparation of a False Return |
| D-5 GLENN PHILLIP<br>  FRANKLIN, III, | : | |
| D-6 BRENT FAROUK SITTO, | : | |
| Defendants. | | |

---

## INDICTMENT

---

**THE GRAND JURY CHARGES THAT:**

At times relevant to this Indictment:

## Introduction

### *The Parties and Businesses*

1.    Defendant JOHN ANGELO was a resident of Boca Raton, Florida, Birmingham, Southfield, and Royal Oak, Michigan.

2.    Defendant CORY JUSTIN MANN was a resident of West Bloomfield, Michigan.

3.    Defendant ROSINA ANGELO was a resident of Mountainside, New Jersey and the twin sister of Defendant JOHN ANGELO.

4.    Defendant MICHAEL DANESHVAR was a resident of Bingham Farms, Michigan.

5.    Defendant GLENN PHILLIP FRANKLIN, III was a resident of Harrison Township, Michigan.

6.    Defendant BRENT FAROUK SITTO was a resident of Bloomfield Township, Michigan.

7.    ANTHONY SERENO (not charged in this indictment) operated several businesses in Michigan from in or about 2012 through in or about 2018 that purported to provide marketing and advertising services for personal injury lawyers, chiropractors, and magnetic resonance imaging ("MRI") facilities, but actually directed automobile crash victims in Michigan to specific facilities.

2

8.     CAROL ALMERANTI (not charged in this indictment) was employed by the Detroit Police Department ("DPD") from in or about 1986 to in or about 2018. She retired from the DPD at the rank of Sergeant in 2018.

9.     KAREN MILLER (not charged in this indictment) was employed by the DPD from in or about 1986 to in or about 2012. She retired from the DPD at the rank of Police Officer in 2012.

10.     JOHN ANTHONY CAPELLA (not charged in this indictment) and SCOTT JAY JAWETZ (not charged in this indictment) were Florida residents who, from at least in or about 2011 to in or about 2018, worked as phone solicitors for several businesses telephoning automobile crash victims living in Michigan to solicit them for services offered by specific personal injury lawyers, chiropractors, and MRI facilities and directing receptive automobile crash victims to specific facilities.

11.     MATHEW CARL SCHWARTZ (not charged in this indictment), was a lawyer who operated a personal injury law firm in Southfield, Michigan from in or about 2003 through the present.

12.     JAYSON PAUL ROSETT owned and operated Accident Information Bureau, L.L.C. ("AIB") from in or about 2009 to in or about 2018. AIB was a limited liability company operating in Birmingham,

Michigan that was in the business of collecting automobile crash victim information from UD-10E State of Michigan Traffic Crash Reports that were obtained through unlawful means.

13. INDIVIDUAL A, an individual known to the grand jury, operated ENTITY A, an entity known to the grand jury, a personal injury law firm in Southfield, Michigan, from at least in or about 2011 through the present.

14. INDIVIDUAL B, an individual known to the grand jury, and INDIVIDUAL C, an individual known to the grand jury, were both chiropractors who together owned and operated several businesses, including medical management companies and MRI facilities with Defendant CORY JUSTIN MANN from in or about 2009 through at least 2015.

15. INDIVIDUAL D, an individual known to the grand jury, was a chiropractor who operated several businesses, including ENTITY B, an entity known to the grand jury, a physical therapy clinic operating in Flint, Michigan.

16. Mann Global, L.L.C. ("Mann Global") was a limited liability company registered to do business in Michigan by Defendant CORY JUSTIN MANN. Mann Global served as a holding company for various business entities controlled by Defendant CORY JUSTIN MANN.

4

17.     Health Systems Medical Management, L.L.C ("HSMM") was a limited liability company operating as a medical management company in Southfield, Michigan. Defendant CORY JUSTIN MANN held an ownership interest in HSMM and controlled HSMM bank accounts.

18.     Clear Imaging, L.L.C. doing business as Pure Open MRI ("Clear Imaging") was a limited liability company operating in Royal Oak, Michigan. Clear Imaging provided MRI services to patients, including automobile crash victims. Defendant CORY JUSTIN MANN held an ownership interest in Clear Imaging and controlled Clear Imaging's bank accounts.

19.     Horizon Imaging, L.L.C. ("Horizon Imaging") was a limited liability company operating in Berkley, Michigan. Horizon Imaging provided MRI services to patients, including automobile crash victims. Defendant CORY JUSTIN MANN held an ownership interest in Horizon Imaging and controlled Horizon Imaging's bank accounts.

20.     Gravity Imaging, L.L.C. ("Gravity Imaging") was a limited liability company operating in Berkley, Michigan. Gravity Imaging provided MRI services to patients, including automobile crash victims. Defendants JOHN ANGELO and CORY JUSTIN MANN, and ANTHONY SERENO held an

5

ownership interest in Gravity Imaging. Defendant CORY JUSTIN MANN solely controlled Gravity Imaging's bank accounts.

21. NJC Marketing, L.L.C. ("NJC Marketing") was a limited liability company registered to do business in Union, New Jersey. NJC Marketing served as a nominee entity for Defendants JOHN ANGELO and ROSINA ANGELO. Through NJC Marketing Defendants JOHN ANGELO and ROSINA ANGELO earned taxable income. Defendants JOHN ANGELO and ROSINA ANGELO used the NJC Marketing account to transfer funds between each other and conduct other financial transactions in order to conceal taxable income earned through NJC Marketing from the IRS.

22. Robin Street Consultants, L.L.C. ("Robin Street") was a limited liability company jointly owned by Defendant JOHN ANGELO and ANTHONY SERENO and operated by Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO. Robin Street served as a nominee entity for Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO. Through Robin Street Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO received taxable income. Defendants JOHN ANGELO and ROSINA ANGELO, and ANTHONY SERENO used the Robin Street business accounts to transfer

funds between each other and conduct other financial transactions in order

to conceal taxable income earned through Robin Street from the IRS

23.     Standard Care, Inc. ("Standard Care") was a corporation

registered to do business in Michigan and operated as a physical therapy

clinic in Farmington Hills, Michigan. Standard Care was owned and

operated by Defendant MICHAEL DANESHVAR.

24.     Auto Accident Attorneys, P.L.L.C. ("Auto Accident Attorneys")

was a professional limited liability company operating as a law firm from a

business location in Southfield, Michigan. Auto Accident Attorneys was

controlled and operated by Defendants GLENN PHILLIP FRANKLIN, III

and BRENT FAROUK SITTO.

25.     UD-10E State of Michigan Traffic Crash Reports ("Crash

Reports") are forms used by Michigan law enforcement officers ("law

enforcement officers") attending to the scene of vehicle crashes to record

information relating to those vehicle crashes. Information contained within

Crash Reports includes, but is not limited to, the following: the names of

persons and identification of vehicles involved in the crash, location of the

crash, injuries to persons, and damage to property. Crash Reports are not

available to the public unless approved for public release by a responsible

person serving the relevant law enforcement entity ("responsible person").

7

26. Entity C was a data and analytics company that provided data and technology services, analytics, predictive insights and fraud prevention for a wide range of industries, and worked as a third-party vendor for participating public law enforcement entities, including the DPD. Entity C offered a variety of services to the public, including a service to commercial users permitting them to access publicly available Crash Reports uploaded to Entity C-operated computer networks by participating law enforcement agencies and to download a copy of the Crash Report for a fee. Participating law enforcement entities are provided usernames and passwords which authorize designated law enforcement officers both broader access to Entity C's database than available to commercial users, including access to reports not available to the public, and the ability to download copies of Crash Reports without paying the required fee.

27. Stolen Crash Reports are Crash Reports that have been unlawfully obtained, accessed, procured, received or viewed by unauthorized individuals prior to a responsible person making the Crash Report available to the public, with many of the reports bearing a watermark reading "Unapproved Report."

### *Scheme to Unlawfully Obtain Crash Reports & Solicit Automobile*
### *Crash Victims*

### *Overview*

28.     Defendants JOHN ANGELO, CORY JUSTIN MANN, MICHAEL
DANESHVAR, GLENN PHILLIP FRANKLIN, III, and BRENT FAROUK
SITTO along with CAROL ALMERANTI, JOHN ANTHONY CAPELLA,
SCOTT JAY JAWETZ, KAREN MILLER, JAYSON PAUL ROSETT, and
MATHEW CARL SCHWARTZ, and ANTHONY SERENO, and other
persons known and unknown to the grand jury, developed a scheme to:

a.     Unlawfully obtain Crash Reports prior to a responsible
person making the Crash Report available to the public, with many of the
reports bearing a watermark reading "Unapproved Report."

b.     Use information contained within these Stolen Crash
Reports to solicit automobile crash victims and direct them to businesses
owned and operated by Defendants JOHN ANGELO, CORY JUSTIN
MANN, MICHAEL DANESHVAR, GLENN PHILLIP FRANKLIN, III, and
BRENT FAROUK SITTO, and INDIVIDUAL D.

29.     Stolen Crash Reports provided Defendants JOHN ANGELO,
CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN PHILLIP
FRANKLIN, III, and BRENT FAROUK SITTO, and INDIVIDUAL D the

opportunity to identify and solicit potential clients before business competitors.

### *The Scheme*

30.    CAROL ALMERANTI, who maintained an Entity C account through her employment with the DPD and accessed the account through a designated username and password, granted KAREN MILLER unauthorized access to the Entity C account by providing KAREN MILLER with CAROL ALMERANTI's DPD username and password to ENTITY C databases so that KAREN MILLER could obtain and distribute Crash Reports that had not been made available for public record by a responsible person.

31.    CAROL ALMERANTI and KAREN MILLER caused to be emailed copies of Stolen Crash Reports to JAYSON PAUL ROSETT using designated email addresses, including the email address airosetti@gmail.com.

32.    JAYSON PAUL ROSETT caused the Stolen Crash Reports he received from CAROL ALMERANTI and KAREN MILLER to be emailed to email addresses designated by Defendant JOHN ANGELO and MATHEW CARL SCHWARTZ, including the email addresses ginacabretti@yahoo.com and operation1963@gmail.com.

33.     Defendant JOHN ANGELO caused the same Stolen Crash Reports he received from JAYSON PAUL ROSETT to be made accessible to JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ, in Florida, through access to specific email address accounts using electronic wire transmissions in interstate commerce, including the accounts for drfeverdr@yahoo.com and rhplar@yhaoo.com.

34.     JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ used the Stolen Crash Reports to identify and solicit automobile crash victims. In their solicitation of automobile crash victims, JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ fraudulently identified themselves as working for a non-profit entity. JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ subsequently completed intake forms for interested automobile crash victims and emailed the completed intake forms to Defendants JOHN ANGELO, CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN PHILLIP FRANKLIN, III, and BRENT FAROUK SITTO.

### The IRS and IRS Forms

35.     The IRS was an agency of the United States Department of the Treasury responsible for enforcing and administering the tax laws of the United States, and collecting taxes owed to the United States.

36.     A Form 1040, U.S. Individual Income Tax Return ("Form 1040"), and a Form 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents ("Form 1040EZ"), were tax returns filed with the IRS in the name of a taxpayer that reported, among other things, the taxpayer's income, deductions and credits, and the amount of tax owed or tax refund claimed.

37.     A Schedule C, Profit or Loss From Business ("Schedule C"), was an IRS form that taxpayers attached to Forms 1040, when applicable, to report, among other things, income and expenses from business entities treated as Sole Proprietorships pursuant to federal internal revenue laws.

38.     A Form 1065, U.S. Return of Partnership Income ("Form 1065"), was a tax return filed with the IRS in the name of a partnership entity that reported, among other things, the partnership's gross income and the deductions and credits allowed by law. Income of the partnership, reported on the Form 1065, would flow through and should be reported on the Form 1040 of the partners.

## COUNT ONE

18 U.S.C. § 1349
Conspiracy to Commit Wire Fraud
(John Angelo, Cory Justin Mann, Michael Daneshvar,
Glenn Phillip Franklin, III, Brent Farouk Sitto)

D-1 JOHN ANGELO
D-2 CORY JUSTIN MANN
D-4 MICHAEL DANESHVAR
D-5 GLENN PHILLIP FRANKLIN, III
D-6 BRENT FAROUK SITTO

39. The factual allegations contained in Paragraphs 1 through 38 of this Indictment are re-alleged and incorporated herein as if copied verbatim.

40. Beginning on or about January 9, 2014, and continuing up to and including on or about October 21, 2019, in the Eastern District of Michigan and elsewhere, Defendants JOHN ANGELO, CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN PHILLIP FRANKLIN, III, and BRENT FAROUK SITTO, and other persons known and unknown to the grand jury, intentionally, unlawfully, and knowingly did combine, conspire, confederate and agree between and among themselves to devise a scheme and artifice to defraud and obtain money or property in the custody, control, or possession of ENTITY C by means of false and fraudulent pretenses through the electronic transmission by wire of writings,

13

signs, signals, pictures and sounds in interstate and foreign commerce, in violation of 18 U.S.C. § 1343.

### Manner and Means of the Conspiracy

41. To accomplish the object of this conspiracy and scheme and artifice to defraud, from at least in or about July of 2014 through on or about April 18, 2018, KAREN MILLER transmitted through electronic wire in interstate commerce CAROL ALMERANTI's DPD username and password to ENTITY C databases falsely representing to ENTITY C and others that she was CAROL ALMERANTI to fraudulently obtain Crash Reports not yet available to the public, for the purpose of distributing the Crash Reports to JAYSON PAUL ROSETT and others.

42. As further part of the conspiracy and scheme and artifice to defraud, Defendants CORY JUSTIN MANN, MICHAEL DANESHVAR, GLENN PHILLIP FRANKLIN, III, and BRENT FAROUK SITTO, and INDIVIDUAL A, and others, from at least in or about July of 2014 through on or about April 18, 2018, paid funds, or caused funds to be paid, to Defendant JOHN ANGELO and MATHEW CARL SCHWARTZ, and ANTHONY SERENO in exchange for their agreement to provide access to Stolen Crash Reports to JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ.

43.    It was further part of the conspiracy and scheme and artifice to defraud that from at least in or about July of 2014 through on or about April 18, 2018, Defendants JOHN ANGELO and MICHAEL DANESHVAR, and ANTHONY SERENO, INDIVIDUAL A, and others, paid funds, or caused funds to be paid, via check in the approximate amount of $2,500 each week, to MATHEW CARL SCHWARTZ to provide access to Stolen Crash Reports to Defendant JOHN ANGELO and ANTHONY SERENO.

44.    It was further part of the conspiracy and scheme and artifice to defraud that from at least in or about July of 2014 through on or about April 18, 2018, Defendants JOHN ANGELO and MICHAEL DANESHVAR, and ANTHONY SERENO, INDIVIDUAL A, and others paid funds, or caused funds to be paid, in the approximate amount of $5,000 cash every other week, to MATHEW CARL SCHWARTZ, for arranging delivery of the cash to CAROL ALMERANTI, JAYSON PAUL ROSETT, and KAREN MILLER in exchange for their emailing Stolen Crash Reports to MATHEW CARL SCHWARTZ.

45.    It was further part of the conspiracy and scheme and artifice to defraud that from in or about July of 2014 through in or about April of 2018, approximately every other week after taking possession of $5,000 in cash, MATHEW CARL SCHWARTZ sent a text message to JAYSON PAUL

ROSETT directing him to travel to the residence of MATHEW CARL SCHWARTZ and retrieve $5,000 cash from a barbecue grill in the backyard of the residence. The cash retrieved from MATHEW CARL SCHWARTZ's residence was thereafter provided as payment to CAROL ALMERANTI, JAYSON PAUL ROSETT, and KAREN MILLER in exchange for their continued agreement to send Stolen Crash Reports to MATHEW CARL SCHWARTZ via daily emails.

46. It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about January 9, 2014, through on or about April 4, 2017, Defendant CORY JUSTIN MANN and INDIVIDUAL B, INDIVIDUAL C, and others paid, or caused to be paid, approximately $15,000 each month via check to JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ in exchange for providing access to Stolen Crash Reports, soliciting automobile crash victims living in Michigan for services, completing intake forms for interested automobile crash victims, and sending completed intake forms to ENTITY B and other businesses operated by Defendant CORY JUSTIN MANN.

47. It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about March 7, 2014, through on or about January 18, 2018, Defendant CORY JUSTIN MANN, INDIVIDUAL D, and

others paid, or caused to be paid, from the bank accounts of Clear Imaging, Horizon Imaging, Gravity Imaging, and other entities, to Defendant JOHN ANGELO and ANTHONY SERENO, more than $300,000 each year during 2015, 2016, and 2017, in exchange for their agreement to provide access to Stolen Crash Reports, manage the solicitation of automobile crash victims living in Michigan for services, and cause automobile crash victims to be sent to Clear Imaging, Horizon Imaging, and Gravity Imaging and other businesses operated by Defendant CORY JUSTIN MANN.

48.    It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about June 3, 2015, through on or about November 23, 2016, Defendant CORY JUSTIN MANN caused HSMM to issue checks drawn on HSMM bank accounts and made payable to NJC Marketing for the amount of $5,000 each to be issued periodically to Defendant JOHN ANGELO, totaling approximately $70,000 each year during both the 2015 and 2016 calendar years, in exchange for Defendant JOHN ANGELO's agreement to provide access to Stolen Crash Reports, manage the solicitation of automobile crash victims living in Michigan for services, and cause automobile crash victims to be sent to Clear Imaging, Horizon Imaging, Gravity Imaging, and other businesses operated by Defendant CORY JUSTIN MANN.

49. It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about January 9, 2014, through on or about July 17, 2017, Defendant MICHAEL DANESHVAR and others paid, or caused funds to be paid, ranging from approximately $600 to $1,500 each week via cash or check drawing on a Standard Care account, to JOHN ANTHONY CAPELLA and SCOTT JAY JAWETZ in exchange for their agreement to provide access to Stolen Crash Reports, solicit automobile crash victims living in Michigan for services, complete facility intake forms for interested automobile crash victims, send the completed facility intake forms, and direct clients to businesses, operated by Defendant MICHAEL DANESHVAR.

50. It was further part of the conspiracy and scheme and artifice to defraud that from at least on or about August 14, 2014, through on or about February 21, 2017, Defendants GLENN PHILLIP FRANKLIN, III, and BRENT FAROUK SITTO and others paid, or caused to be paid, funds, typically in the amount of $2,500 each week via check drawn on an Auto Accident Attorneys' bank account, to Defendant JOHN ANGELO and ANTHONY SERENO for providing access to Stolen Crash Reports, managing the solicitation of automobile crash victims living in Michigan for

services, and causing automobile crash victims to be sent to Auto Accident

Attorneys.

**All in violation of Title 18, United States Code, Section 1349.**

## COUNT TWO

18 U.S.C. § 371
Conspiracy to Defraud the United States
(John Angelo, Rosina Angelo)

D-1 JOHN ANGELO
D-3 ROSINA ANGELO

51.    The factual allegations contained in Paragraphs 1 through 38

and 41 through 50 of this Indictment are re-alleged and incorporated herein

as if copied verbatim.

### *IRS Assessment and Collection Attempts Relating to Defendant JOHN ANGELO's Individual Taxes for Calendar Years 1998 through 2001*

52.    On or about August 31, 2004, the IRS assessed additional

individual income taxes due and owing and penalties of $303,847 and

$375,889 for Defendant JOHN ANGELO for calendar years 1999 and

2000, respectively.

53.    On or about September 20, 2004, the IRS assessed additional

individual income taxes due and owing and penalties of $158,923 for

Defendant JOHN ANGELO for calendar year 1998.

54.    On or about September 27, 2004, the IRS assessed additional individual income taxes due and owing and penalties of $193,680 for Defendant JOHN ANGELO for calendar year 2001.

55.    On or about February 23, 2005, a Collection Due Process Notice of Intent to Levy was delivered to Defendant JOHN ANGELO, informing him of the IRS's assessment of additional individual income taxes for calendar year 1998.

56.    On or about February 25, 2005, a Collection Due Process Notice of Intent to Levy was delivered to Defendant JOHN ANGELO, informing him of the IRS's assessment of additional taxes for the calendar years 1999, 2000, and 2001.

57.    On or about March 2, 2005, the IRS received a signed return receipt from Defendant JOHN ANGELO acknowledging receipt of the Notices of Intent to Levy for calendar years 1998 through 2001.

58.    On or about March 24, 2005, the IRS filed an IRS Form 668, Notice of Federal Tax Lien, with the Palm Beach County Courthouse on March 24, 2005, indicating Defendant JOHN ANGELO owed $1,380,793 in taxes for calendar years 1998 through 2001.

59.    On or about September 21, 2005, the IRS received an offer in compromise from Defendant JOHN ANGELO requesting settlement of his tax due and owing amount for calendar years 1998, 1999, 2000, and 2001.

60.    On or about October 11, 2005, Defendant JOHN ANGELO filed a petition initiating Chapter 7 personal bankruptcy proceedings in the Southern District of Florida, which acknowledged an outstanding debt owed to the IRS.

61.    On or about November 22, 2005, the IRS rejected Defendant JOHN ANGELO's offer in compromise of September 21, 2005.

62.    On or about June 5, 2006, the IRS received a second offer in compromise from Defendant JOHN ANGELO requesting settlement of his tax due and owing amount for calendar years 1998, 1999, 2000 and 2001.

63.    On or about October 27, 2006, the IRS rejected Defendant JOHN ANGELO's second offer in compromise of June 5, 2006.

64.    In or about 2009, 2011 2012, 2013, and 2014, the IRS sent IRS Notices to Defendant JOHN ANGELO at his last known address informing him of his outstanding tax due and owing amount for calendar years 1998 through 2000.

65.    In or about 2010, 2011, 2012, 2013, and 2014, the IRS sent IRS Notices to Defendant JOHN ANGELO at his last known address

informing him of his outstanding income tax due and owing amount for calendar year 2001.

66. On or about October 12, 2015, the IRS wrote-off as uncollectible for Defendant JOHN ANGELO $454,527.94 for calendar year 1999 and $581,998 for calendar year 2000 in outstanding income tax due and owing, including penalties and interest.

67. On or about October 19, 2015, the IRS wrote-off as uncollectible for Defendant JOHN ANGELO $182,795.54 for calendar year 1998 in outstanding income tax due and owing, including penalties and interest.

68. On or about November 9, 2015, the IRS wrote-off as uncollectible for Defendant JOHN ANGELO $333,107.99 for calendar year 2001 outstanding income tax due and owing, including penalties and interest.

69. From on or about September 10, 2010 and continuing to on or about at least May 11, 2017, in the Eastern District of Michigan and elsewhere, Defendants JOHN ANGELO and ROSINA ANGELO, together with ANTHONY SERENO and others, both known and unknown to the Grand Jury, intentionally, unlawfully, and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United

States for the purpose of impeding, impairing, obstructing, and defeating

the lawful government functions of the Internal Revenue Service of the

Treasury Department in the ascertainment, computation, assessment, and

collection of the revenue: to wit, income taxes, in violation of Title 18,

United States Code, Section 371.

## Objective of the Conspiracy

70. It was the object of this conspiracy for Defendants JOHN

ANGELO and ROSINA ANGELO to impede and impair: (a) the collection of

Defendant JOHN ANGELO's assessed income tax due and owing,

including penalties and interest, for calendar years 1998 through 2001; and

(b) the ascertainment, collection, and assessment of the income taxes for

Defendant JOHN ANGELO for calendar years 2010 through 2016.

## Manner and Means of the Conspiracy

71. To accomplish the object of this conspiracy, Defendants JOHN

ANGELO and ROSINA ANGELO agreed to create a nominee entity, NJC

Marketing, open bank accounts in the name of NJC Marketing, and direct

businesses to make checks payable to NJC Marketing to conceal

Defendant JOHN ANGELO's receipt of taxable income.

## Overt Acts

In furtherance of the conspiracy, and to achieve the unlawful objects thereof, Defendants JOHN ANGELO and ROSINA ANGELO committed the following overt acts in the Eastern District of Michigan and elsewhere:

72. From on or about September 10, 2010, through on or about November 23, 2016, in an attempt to impede and impair IRS efforts to both collect Defendant JOHN ANGELO's income tax due and owing for calendar years 1998 through 2001 and the ascertainment, collection, and assessment of the income taxes for Defendant JOHN ANGELO for calendar years 2010 through 2016, Defendants JOHN ANGELO and ROSINA ANGELO caused funds earned by Defendant JOHN ANGELO from WCIS and HSMM to be paid via check made payable to the nominee entity NJC Marketing.

a. For example, during the calendar years 2010 through 2013 and 2015 through 2016, Defendants JOHN ANGELO and ROSINA ANGELO directed WCIS to pay fees earned by Defendant JOHN ANGELO via check made payable to nominee entity NJC Marketing then subsequently negotiated the checks, in the approximate amounts and by calendar year as follows: $13,750 (2010); $110,750 (2011); $98,500 (2012); and $83,500 (2013);

24

b.      For example, during the calendar years 2015 and 2016,

Defendants JOHN ANGELO and ROSINA ANGELO directed HSMM

to pay fees earned by Defendant JOHN ANGELO via check made

payable to nominee entity NJC Marketing then subsequently

negotiated the checks, in the approximate amounts and by calendar

year as follows: $70,000 (2015); $70,000 (2016).

73.     On or about April 15, 2011, in an attempt to conceal from the

IRS the taxable income he earned, Defendant JOHN ANGELO caused his

2010 Form 1040 submitted to the IRS, underreporting business income on

Line 12, adjusted gross income on Line 37, taxable income on Line 43, and

omitting business gross receipts amounts.

74.     On or about May 21, 2012, in an attempt to conceal from the

IRS the taxable income Defendant JOHN ANGELO earned, Defendant

ROSINA ANGELO caused her 2011 Form 1040 to be submitted to the IRS,

underreporting her adjusted gross income on Line 37, her taxable income

on Line 43, and omitting Schedule C gross receipts amounts.

75.     On or about June 7, 2012, in an attempt to conceal from the

IRS the taxable income he earned, Defendant JOHN ANGELO caused his

2011 Form 1040 to be submitted to the IRS underreporting his business

income on Line 12, adjusted gross income on Line 37, taxable income on Line 43, and omitting business gross receipts amounts.

76.    On or about February 27, 2013, in an attempt to conceal from the IRS the taxable income he earned, Defendant JOHN ANGELO caused his 2012 Form 1040 to be submitted to the IRS, underreporting business income on Line 12, adjusted gross income on Line 37, taxable income on Line 43, and omitting business gross receipts amounts.

77.    On or about March 4, 2014, in an attempt to conceal from the IRS the taxable income he earned, Defendant JOHN ANGELO caused his 2013 Form 1040EZ to be submitted to the IRS, bearing Defendant JOHN ANGELO's signature, made under penalties of perjury, with a statement indicating the return was true, correct, and accurately listed all amounts and sources of income received, whereas Defendants JOHN ANGELO knew the return omitted business gross receipts, adjusted gross income, and taxable income earned by Defendant JOHN ANGELO through NJC Marketing.

78.    On or about April 15, 2014, in an attempt to conceal from the IRS the taxable income Defendant JOHN ANGELO earned, Defendant ROSINA ANGELO caused her 2013 Form 1040 to be submitted to the IRS,

underreporting adjusted gross income on Line 37, taxable income on Line
43, and omitting Schedule C gross receipts amounts.

79.    On or about April 29, 2016, in an attempt to conceal from the
IRS the taxable income he earned, Defendant JOHN ANGELO caused his
2015 Form 1040 to be submitted to the IRS, underreporting his adjusted
gross income on Line 37, taxable income on Line 43, and omitting business
gross receipts earned by Defendant JOHN ANGELO through Robin Street
and NJC Marketing.

80.    In or about May of 2017, in an attempt to conceal from the IRS
the taxable income earned by Defendant JOHN ANGELO, Defendant
ROSINA ANGELO provided fraudulent and incomplete accounting and
bookkeeping records to INDIVIDUAL E for preparation of Defendant JOHN
ANGELO's 2016 Form 1040EZ for submission to the IRS.

81.    On or about May 11, 2017, in an attempt to conceal from the
IRS the taxable income earned by Defendant JOHN ANGELO, Defendants
JOHN ANGELO and ROSINA ANGELO caused Defendant JOHN
ANGELO's 2016 Form 1040EZ to be submitted to the IRS, bearing
Defendant JOHN ANGELO's signature, made under penalties of perjury,
with a statement indicating the return was true, correct, and accurately
listed all amounts and sources of income received, whereas Defendants

JOHN ANGELO and ROSINAL ANGELO knew the return omitted business gross receipts, adjusted gross income, and taxable income earned by Defendant JOHN ANGELO through Robin Street and NJC Marketing.

82.    In or about February of 2018, in an attempt to conceal from the IRS the taxable income earned by Defendant JOHN ANGELO, Defendant ROSINA ANGELO provided fraudulent and incomplete accounting and bookkeeping records to INDIVIDUAL E, for preparation of Defendant JOHN ANGELO's 2016 Form 1040 for submission to the IRS.

83.    On or about February 26, 2018, in an attempt to conceal from the IRS the taxable income earned by Defendant JOHN ANGELO, Defendants JOHN ANGELO and ROSINA ANGELO caused Defendant JOHN ANGELO's 2016 Form 1040 to be submitted to the IRS, falsely reporting adjusted gross income on Line 37, taxable income on Line 43, and omitting business gross receipts amounts.

84.    In or about February of 2019, in an attempt to conceal from the IRS the taxable income earned by Defendant JOHN ANGELO, Defendant ROSINA ANGELO provided fraudulent and incomplete accounting and bookkeeping records to INDIVIDUAL E, for preparation of Defendant JOHN ANGELO's 2017 Form 1040EZ for submission to the IRS.

85.   On or about February 27, 2019, in an attempt to conceal from

the IRS the taxable income earned by Defendant JOHN ANGELO,

Defendants JOHN ANGELO and ROSINA ANGELO caused Defendant

JOHN ANGELO's 2017 Form 1040EZ to be submitted to the IRS, bearing

Defendant JOHN ANGELO's electronic signature, made under penalties of

perjury, with a statement indicating the return was true, correct, and

accurately listed all amounts and sources of income received, whereas

Defendants JOHN ANGELO and ROSINAL ANGELO knew the return

omitted business gross receipts, adjusted gross income, and taxable

income earned by Defendant JOHN ANGELO through Robin Street and

NJC Marketing.

**All in violation of Title 18, United States Code, Section 371.**

## COUNT THREE

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(John Angelo, Rosina Angelo)

D-1 JOHN ANGELO
D-3 ROSINA ANGELO

86.   The factual allegations contained in Paragraphs 1 through 38

and 41 through 50, 52 through 68, and 70 through 85 of this Indictment are

re-alleged and incorporated herein as if copied verbatim.

87.     On or about April 29, 2016, in the Eastern District of Michigan and elsewhere, the Defendants JOHN ANGELO and ROSINA ANGELO did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS of a false and fraudulent Form 1040 for Defendant JOHN ANGELO for the calendar year 2015. The return was false and fraudulent as to a material matter, in that the return falsely reported Line 37, adjusted gross income of $42,500, Line 43, taxable income of $31,757, and that Defendant JOHN ANGELO electronically signed the return with a statement indicating the return was to the best of the taxpayer's knowledge and belief, true, correct, and accurately listed all amounts and sources of income received during the tax year, whereas as Defendants JOHN ANGELO and ROSINA ANGELO, then and there well knew and believed, Defendant JOHN ANGELO had earned additional business gross receipts, adjusted gross income, and taxable income through Robin Street and NJC Marketing.

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

## COUNT FOUR

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(John Angelo, Rosina Angelo)

D-1 JOHN ANGELO
D-3 ROSINA ANGELO

88.    The factual allegations contained in Paragraphs 1 through 38
and 41 through 50, 52 through 68, and 70 through 85 of this Indictment are
re-alleged and incorporated herein as if copied verbatim.

89.    On or about May 11, 2017, in the Eastern District of Michigan
and elsewhere, the Defendants JOHN ANGELO and ROSINA ANGELO did
willfully aid and assist in, and procure, counsel, and advise the preparation
and presentation to the IRS of a false and fraudulent Form 1040EZ for
Defendant JOHN ANGELO for the calendar year 2016. The return was
false and fraudulent as to a material matter in that the Form 1040EZ
included a declaration under penalties of perjury that the return accurately
listed all amounts and sources of income received during the tax year,
whereas as Defendants JOHN ANGELO and ROSINA ANGELO then and
there well knew and believed, the return did not accurately list all amounts
and sources of income received during the tax year and understated the
amount of business gross receipts, adjusted gross income, and taxable

income Defendant JOHN ANGELO received during the tax year through

Robin Street and NJC Marketing.

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

## COUNT FIVE

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(John Angelo, Rosina Angelo)

D-1 JOHN ANGELO
D-3 ROSINA ANGELO

90.    The factual allegations contained in Paragraphs 1 through 38 and 41 through 50, 52 through 68, and 70 through 85 of this Indictment are re-alleged and incorporated herein as if copied verbatim.

91.    On or about February 27, 2019, in the Eastern District of Michigan and elsewhere, the Defendants JOHN ANGELO and ROSINA ANGELO did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS of a false and fraudulent Form 1040EZ for Defendant JOHN ANGELO for the calendar year 2018. The return was false and fraudulent as to a material matter in that the Form 1040EZ included a declaration under penalties of perjury that the return accurately listed all amounts and sources of income received during the tax year, whereas as Defendants JOHN ANGELO and ROSINA ANGELO then

and there well knew and believed, the return did not accurately list all

amounts and sources of income received during the tax year and

understated the amount of business gross receipts, adjusted gross income,

and taxable income Defendant JOHN ANGELO received during the tax

year through Robin Street and NJC Marketing.

**All in violation of Title 26, United States Code, Section 7206(2) and
Title 18, United States Code, Section 2.**

## COUNTS SIX and SEVEN

26 U.S.C. § 7206(2)
Aiding or Assisting in the Preparation of a False Return
(Cory Justin Man)

D-2 CORY JUSTIN MANN

92.    The factual allegations contained in Paragraphs 1 through 38

and 41 through 50, 52 through 68, and 70 through 85 of this Indictment are

re-alleged and incorporated herein as if copied verbatim.

93.    On or about each date set forth below, in the Eastern District of

Michigan and elsewhere, Defendant CORY JUSTIN MANN did willfully aid

and assist in, and procure, counsel, and advise the preparation and

presentation to the IRS of the Form set forth below for the taxpayer set

forth below for the calendar year set forth below. Each return was false and

fraudulent as to a material matter, in that the return represented that the

taxpayer set forth below reported adjusted gross income, taxable income,

or Schedule K-1 distributions in amounts set forth below, whereas, as

Defendant CORY JUSTIN MANN then and there well knew and believed,

the taxpayer received a substantially different amount of adjusted gross

income, taxable income, Schedule K-1, Line 1 Ordinary income, or

Schedule K-1, Line 19A Distributions than that which were reported, as set

forth below:

| Count | Defendant | Taxpayer/ Calendar Year/ Form | Approximate Date Filed with the IRS | False Items | Amount Claimed |
|-------|-----------|-------------------------------|-------------------------------------|-------------|----------------|
| SIX | D-2 CORY JUSTIN MANN | Cory Mann 2018 Form 1040 | October 14, 2019 | A) Form 1040, Line 7, Adjusted gross income<br>B) Form 1040, Line 10, Taxable income<br>C) Form 1040, Line 22, Amount you owe | A) $6,505,466<br><br>B) $5,763,365<br><br>C) $524,673 |

| Count | Defendant | Taxpayer/ Calendar Year/ Form | Approximate Date Filed with the IRS | False Items | Amount Claimed |
|-------|-----------|-------------------------------|-------------------------------------|-------------|----------------|
| **SEVEN** | D-2 CORY JUSTIN MANN | Gravity Imaging LLC 2018 Form 1065 | February 15, 2019 | A) 2018 Schedule K-1, Robin Street Consultants, Line 1 Ordinary business Income B) 2018 Schedule K-1, Robin Street Consultants, Line 19A Distributions | A) $0 B) $244,429 |

**All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.**

Date: <u>December 16, 2020</u>          A True Bill.


                                        <u>s/ *Grand Jury Foreperson*</u>
                                        Grand Jury Foreperson

STUART M. GOLDBERG
*Acting Deputy Assistant Attorney General*
U.S. Department of Justice Tax Division


<u>s/ *Mark McDonald*</u>
MARK MCDONALD
CHRISTOPHER P. O'DONNELL
Trial Attorneys
U.S. Department of Justice, Tax Division

**Companion Case information MUST be completed by AUSA**

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover S |
|---|---|

Case: 2:20-cr-20599
Judge: Roberts, Victoria A.
MJ: Stafford, Elizabeth A.
Filed: 12-16-2020 At 01:18 PM
INDI USA V. ANGELO ET AL (DA)

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it

| Companion Case Information | Companion Case Number: 4:18-CR-20368 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned:  Matthew F. Leitman |
| ☑ Yes        ☐ No | AUSA's Initials: |

**Case Title:** USA v.  JOHN ANGELO, et al.

**County where offense occurred :** Genesee County

**Check One:**        ☑ **Felony**                ☐ **Misdemeanor**                ☐ **Petty**

    __X__ Indictment/_____Information --- **no** prior complaint.
    _____ Indictment/_____Information --- based upon prior complaint [Case number: _____]
    _____ Indictment/_____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____        **Judge:** _____

    ☐ Original case was terminated; no additional charges or defendants.
    ☐ Corrects errors; no additional charges or defendants.
    ☐ Involves, for plea purposes, different charges or adds counts.
    ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

---

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

December 16, 2020
Date

Mark McDonald
Assistant United States Attorney
210 Federal Building
600 Church Street
Flint, Michigan 48502
Telephone:  (810) 766-5177
Email: mark.s.mcdonald@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

03/11/2013